## Mechanics & Traders Bank, Appellant, *v.* Seitz Bros.

[Marked to be reported.]

*Duty of bank to appropriate deposit to pay note.*

While a bank which has discounted a promissory note, may appropriate funds in its hands belonging to any party to the note, to the payment of the note, when payment is not made at the time and place named, yet it is not bound to do so as to any party except the maker.

As the maker is liable to the indorser, he cannot require the bank to appropriate the indorser's funds to the payment of his own note, nor complain if the bank refuses to do so.

But where the bank holds funds of the maker when the note matures, it is bound to appropriate his deposit to the payment of the note in relief of the sureties, and a failure to do so to the loss of the sureties renders the bank liable.

*Effect of unauthorized charge by clerk—Equities.*

The payee of a promissory note, a corporation, indorsed it to its president as an individual, who had it discounted by his bank before maturity, without notice of defence to the bank; on being returned protested, a clerk charged the note up to the account of the president, but afterwards corrected this, by direction of the cashier, by entry of a credit, so as to let the account stand as before.

*Held,* that the act of the clerk in charging up the note was not payment in fact that divested the title of the bank, so that the subsequent credit made under the direction of the cashier was a new purchase of the note made after protest and subject to the equities between the maker and payee.

Argued March 9, 1892. Appeal, No. 134, July T., 1891, by plaintiff, from judgment of C. P. Northampton Co., Oct. T., 1890, No. 41, on verdict for defendants. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Assumpsit against makers of promissory note.

The facts appear by the opinion of the Supreme Court.

Plaintiff offered the note and rested.

Defendant then offered to prove by depositions of the cashier of plaintiff bank, that the note in suit was paid, and that the present suit was brought in consequence of an arrangement between Hayes as indorser, and himself, that the suit should be brought by the bank.

Objected to, that it does not show that the note was paid by Mr. Hayes, the indorser; that plaintiff cannot be affected by this testimony in the absence of an offer to prove that Hayes,

the indorser, received the note with notice of any defence existing between the makers of the note and the payee, and in the absence of an offer to prove knowledge on the part of the bank at the time they received the note, of any defence to it in the hands of the payees or in the hands of Mr. Hayes, the indorser.   Objection overruled and bill sealed. [9]

The depositions recited, among other things, the facts stated in the opinion of the Supreme Court; also, knowledge by cashier of defence after discounting note.

Defendant then offered in evidence, under objection and exception, the agreement to furnish the ice machine. [10]

Further evidence was given, under objection and exception, stating the reason the note was given, and failure of consideration between maker and payee. [11–13]

The court charged, *inter alia :*

" Now, the question that I will submit to you, and if wrong in doing so I will have an opportunity for correcting it on motion for new trial, is whether under the evidence the Mechanics & Traders Bank, of Brooklyn, are the *bona fide* holders of this note, without notice of the equities existing between Seitz Bros. and the refrigerator company.  If they are, then they are entitled to your verdict.  If they are not, then your verdict would be in favor of the defendant, on the undisputed evidence, as I understand it, that the consideration of the note had utterly failed." [1]

Defendants' points, refused, were as follows, *inter alia :*

" 1. There being no evidence in this cause that the plaintiff has been paid the amount of the note sued on, and no evidence to contradict the allegation in the pleading that plaintiff is a *bona fide* holder of the note for value before maturity without notice, the verdict must be for the plaintiff. [2]

" 2. The charge of the amount of this note against Mr. Hayes's account by a clerk of plaintiff without Mr. Hayes's consent or direction was not a payment of the note between Mr. Hayes and plaintiff, and the subsequent crediting of the note to Mr. Hayes, the bank never having given up possession of the note, did not alter the rights which the bank acquired when it first discounted the note for Hayes. [3]

" 3. The charge of the amount of the note to Mr. Hayes's account by a clerk of the bank and the subsequent direction of

the cashier that the amount of the note be credited to Mr. Hayes, the bank never having yielded possession of the note and Mr. Hayes having never appropriated his deposit for its payment, in the absence of any evidence of fraud and collusion between the bank and Hayes to injure or affect defendants' rights, cannot be considered as a payment of the note or as altering the bank's rights as against defendants." [4]

Four other points by plaintiffs as to purchase after maturity and asking binding instructions were refused. [5-8]

Verdict and judgment for defendants.  Plaintiffs appealed.

*Errors assigned* were (1-8) instructions, quoting charge and points ; (9-13) rulings on evidence, quoting bills of exception. and evidence.

*Russell C. Stewart,* for appellant.—Plaintiff took the note in regular course of business, before maturity and without notice. The charging and crediting of the note is the basis of defence. The defence is (1) an agreement to sue for the ice company's benefit, and (2) sale and repurchase of the note after maturity by charging and crediting it.

The holder's title is never affected after his title has been acquired.  The charge of the court left the jury to pass on the question of equities, without limiting the notice of such equities to the time when the notice was given, to the party who gave it, or to the effect of charging and crediting the note.  It is no answer to say we should have asked for instructions on these points.  The charge must conform to the facts : Reber v. Schitler, 141 Pa. 647, a case analogous to ours on this point.

The burden was on defendant to controvert the presumptions and benefits which the law gives to holders of negotiable paper. The evidence must be clear and sufficient to justify an inference of knowledge : Battles & Webster v. Laudenslager, 84 Pa. 446.  Gross negligence is not sufficient : State Bank v. McCoy, 69 Pa. 204 ; McSparrow v. Neely, 91 Pa. 17. *Mala fides* must be shown : Phelan v. Moss, 67 Pa. 59.  The evidence in the deposition was not sufficient.  It showed only a disposition to oblige a customer by plaintiff bank, by suing the maker first.  Even if there was an agreement to sue for the ice company's benefit, yet if there was no notice to Hayes such as would affect his title during the time he owned the note as an

individual, he could not make such agreement except by act-
ually paying the note and then asking the bank to sue.

The effect of the book-keeping by charging and crediting
the note, was not payment: Bank v. Ralston, 3 Phila. 328.  It
was a release to an indorser (Hayes) of his collaterals (depos-
it) by which the maker was not prejudiced.  A bank is under
no obligation to appropriate a discounter's deposit to the pay-
ment of a protested note.  If so, discounting would not help
but ruin a business by depleting the deposit, and a business man
would have to keep his deposit in one bank and discount paper
in another.  Commercial Nat. Bk. v. Henninger, 105 Pa. 496;
German Nat. Bk. v. Freeman, 138 Pa. 474, do not apply, be-
cause the deposits there were of the makers, and a bank may
not return to the maker his collaterals, as the indorser, as sure-
ty, would be injured thereby.

Notice of equities to affect the bank even if it did become an
indorser after maturity, must have been given to Hayes while
he was individual owner of the note.  Notice to a company is
not notice to its officers: Wilson v. Bk., 6 Cent. R. 756; Phil-
lipsburg Savings Bank's Ap., 10 W. N. 265.

An indorsee of overdue paper may recover if his indorser
could: Daniels, Negotiable Inst. 663, § 726, 3d ed.; Wilson v.
Mechanics Savings Bank, 45 Pa. 488; Riegel v. Cunningham,
9 Phila. 177.  Even if he has knowledge of a defence: Roberts
v. Lane, 64 Me. 108.

*Charles F. Walter*, for appellee.—When the note was return-
ed protested it was charged against Hayes's account, the ac-
count being sufficient to pay it.  The note was therefore paid and
the bank held it as trustee for Hayes.  When the bank again
credited the note, they became holders after maturity with
notice of defence.  Bank v. Ralston, 3 Phila. 328, recognizes
the availability of a defence against the bank where the bank,
by some rule or custom, pays the note by charging it.  That the
bank has the right to apply the deposit to the payment of the
note is settled by Commercial Nat. Bk. v. Henninger, 105 Pa.
500; German Nat. Bk. v. Foreman, 138 Pa. 474; 3 Randolph,
Com. Paper, § 144; Mulch v. Bk., 11 Mo. Ap. 144.

Wilson v. Bk., 6 Cent. R. 756, is not authority for the point
cited by appellant.  It holds that notice to a cashier is not no-

tice to the bank unless the cashier reveals the knowledge to one or more of its officers.

Appellant is only here in its efforts to favor a customer, the understanding being that if the bank did not recover from the maker, Hayes would pay it. The question was properly submitted to the jury.

OPINION BY MR. JUSTICE WILLIAMS, June 1, 1892.

The defendants are brewers in the city of Easton. In February, 1890, they bought from the New Process Ice and Refrigerating Co. a refrigerating machine for use in their business. In the following June they gave in part payment for the machine their negotiable note for fifteen hundred dollars, payable at the First National Bank of Easton at ninety days. The company transferred this note, a day or two after it was given, to its president, J. J. Hayes, in consideration of his payment of bills, then maturing, to an amount equal to or greater than the note. He soon after indorsed the note to the plaintiff's bank which discounted it, placing the proceeds to his credit. The bank thus became the owner of the note in the usual course of business, for full value, before maturity, and without notice of any equities between the maker and the payee, if any such existed. When it fell due it was sent to the bank at which it was payable for collection. It was not paid, and was returned to the holder duly protested. Upon this state of facts, the maker, the payee and the indorser, were severally liable to the bank, and were liable to each other in the order in which their names stood as parties to the instrument.

Hayes kept an account at the bank, and when the note was returned protested, the balance in his favor was sufficient to cover the amount due upon it. A clerk, in accordance with what he considered a business habit, charged the note up to Hayes's account on the books of the bank; but when this fact came to the notice of the cashier, he told the clerk that this was not as they intended, and directed him to correct his act by crediting Hayes with the same amount so as to leave his account to stand as before.

The bank then brought this suit against the makers. They allege they have a defence against the payee, and to deprive the plaintiff of its position as a holder in due course of busi-

ness and before maturity, they contend that it was the duty of
the bank to charge up the note against the balance due to
Hayes, and that the existence of this balance was payment in
law.

They further contend that, at all events, the act of the clerk
in charging up the note was payment in fact that divested the
title of the bank ; and that the subsequent credit, made under
the direction of the cashier, is not to be treated as the correc-
tion of a mistake, but a new purchase of the note, made after
protest, and subject to the duty to inquire, which the law im-
poses on the purchaser of overdue and dishonored paper.

It is practically conceded, and it is clear upon the facts as
they are presented to us, that, unless the defendant's theory
can be sustained, they cannot defend successfully in this case.
The bank, if a holder for value in the ordinary course of busi-
ness before maturity, is not subject to the equities growing out
of the sale of the refrigerating machine ; and must recover on
its title as the holder. We come, then, to inquire what was
the duty of the bank in regard to the deposit standing to the
credit of Hayes? The general rule is well settled that, while
the bank may appropriate funds in its hands belonging to any
previous party to the note, to the payment of it, when payment
is not made at the time and place named, yet it is not bound
to do so. The note may be treated as, in effect, an order or
check authorizing the bank to apply the deposit to the pay-
ment, but the deposit is not payment in law. Even as between
the bank and the maker, the bank is not bound to make the
application, but may take the risk of its ability to collect from
him and allow him to withdraw his deposit: Morse on Banks
and Banking, 559. But where the bank holds funds of the
maker when the note matures, it is bound to consider the in-
terests of the indorsers or sureties, and if it allows the maker
to withdraw his funds after protest, and the indorsers are losers
thereby, the bank is liable to them : Commercial National Bank
v. Henniger, 105 Pa. 496 ; German National Bank v. Foreman,
138 Pa. 474. The reason of this rule is, that the maker is the
principal debtor, and liable to all the indorsers, whose under-
taking is to pay if he does not. If the holder surrenders the
money or securities of the maker, he parts with that in which
all who have a right to look to the maker for indemnity have a

definite interest; and if his act inflicts loss on them he must stand, as to the money or securities surrendered, in the place of the maker.  As the maker is liable to the indorser, it is very plain that he cannot require the bank to appropriate the indorser's funds to the payment of his own note, nor complain if the bank refuses to do so.  He has no business with the state of accounts between the indorser and the bank; but it is h s duty to relieve the indorser by the payment of the note in accordance with its terms.

Nor was there any payment in fact in this case.  The indorser did not authorize the application of his deposit to this note, but insisted that the bank should proceed against the makers.  The bank agreed to this.  The unauthorized charge made by the clerk was at once corrected by the cashier; the deposit of the indorser was left subject to his check, and the bank by this action called on the makers to make good their promise to pay.  We see no reason why they should not.

The first, second, third and fourth assignments of error are sustained, also the tenth, eleventh, twelfth and thirteenth.

The judgment is reversed and a venire facias de novo awarded.